Jr. and Tanner Mansell. Andrew Adler is here for the appellants Moore and Mansell. Jonathan Colan is here for the United States. And Mr. Adler, you may begin your argument. May it please the court, Andrew Adler from the Federal Defender's Office on behalf of Tanner Mansell along with Ashley Litwin and Mark Seidels on behalf of John Moore. In Moore's set, the intention to keep it wrongfully. The district court refused our request to give that definition here. Well, Moore's set involved a different statute. It involved section 641. In this case, involved 661. That's correct, your honor. And there's a word in that statute, 661. The word convert is in that statute, but the word convert isn't in 661. That's correct, your honor. There's no dispute, I don't think, with the government that the word steal bears the same meaning in both statutes which were codified at the exact same time in the exact same act of Congress in 1948. It's true that 641 uses the word convert, but the meaning of the word steal has to be the same in both statutes. And under that meaning, had that definition been given from a Supreme Court precedent, John and Tanner would have been acquitted. There is no allegation that they took property to keep for themselves. What Supreme Court precedent are you talking about? Moore's set, your honor, it says to steal. It's an exclusive definition on page 2. But Moore's set involved 641. It involved the theft of government property. There's a big difference between the theft of government property and property stolen in the special maritime and territorial jurisdiction of the United States. And it seems like there would be a reason for a difference because, for example, a government employee might take a laptop home or stationary home not intended to convert it to his or her own use. But there's a big difference between stealing property from the Gulf of Mexico. Your honor, we think that difference cuts in our statute. It covers the waterfront. This is what the Supreme Court said in Moore's set, that we can't allow people to sort of fall through the cracks here, and that's why it has an independent conversion element. In 661, there is no conversion element. It's steal or purloin, and that's it. It is a narrower statute in that sense. It goes back to 1790. There's never been a case in any court that I am aware of that is prosecuted something like this, where our clients reasonably interfered with a fishing line in the middle of the ocean because they reasonably believed that it was illegally killing sharks. The jury understood that this was not stealing in the ordinary sense of the word. Where do you think that the jury instructions covered the mens rea at the state of mind? Because honestly, I'm not sold on your conversion argument, but it doesn't seem to me that the jury was really instructed on state of mind. Do you think that There was a willfulness instruction in this case. That's the best that we got, but the problem with that is that it essentially incorporated the overbroad definition of stealing. So it says, you have to act with intent to disobey or disregard the law or do something the law forbids. But the law, as far as the jury knew, prevented stealing, which the court defined as basically, if you knew it belonged to someone and took it, then you're stealing. And the facts of this case show that that is overbroad because when you are taking property to resolve an emergency, a life or death emergency, which the appellants were doing in this case, that is not stealing. And that is why the jury's seventh note in this case says, look, are there any other defenses available? They were looking for a way to equip because they knew this wasn't stealing. That's sort of the same problem I'm having with the mens rea. So in a situation, and I'll ask this to the government so they can think about it now. If you have, you're walking down the street and you see someone who is being robbed by someone with a gun, possessing a gun, and you fight that person and you take that person's gun, you're clearly assuming that it belongs to them. You're taking, you're stealing according to the government, that person's gun, correct? I would think so, your honor. But you don't necessarily have the mens rea to commit a theft of what we traditionally, at least under when I went to law school under criminal 101, the mens rea of what it meant to steal something. So I mean, I do have an issue with that particular, the mens rea requirement here. Yeah, your honor, I believe that exact hypothetical is in, I think, the Bishop Treatise that we cite, where you are basically taking the police officer's firearm to nobody would understand that to be theft. And this is why we have juries to prevent prosecutions like this from going too far. The jury is, stealing is a common word. Everyone knows it when you see it. Let me pose another hypothetical. Let's assume that someone steals a motor off someone's boat, not for the purpose of converting it to their own use or just to hide it or for retribution or something of that nature. Would that constitute a violation of this statute? Your honor, I think it might depend. I think the answer would probably be no. It might be something else. It might be destruction of property. It might be a civil tort, of course. And we don't dispute that what the appellants did here was a civil- You want to hide it from them. You want to hide their motor from them. Well, in that situation, there might be an argument that they're taking it for their own benefit, the retribution. Is that what you're saying? I think that's the problem with your conversion argument, though, because there are a lot of hypotheticals. I think clearly it seems that the statute should apply in that situation, but your conversion argument would mean that it didn't. So it almost seems like you're narrowing the statute instead of imposing a proper mens rea. And I apologize, but one of the questions I have, and you kind of raised it, but you didn't necessarily articulate it as thoroughly as I would have liked, which is a fair notice or a fair warning. It seems to me that if you're a person, a regular citizen, you have no idea what the statute means. Exactly, your honor. And we do articulate that in terms of the ancient canon of construction that penal statutes have to strictly construed. We cite the Dubin case just from last term in the Supreme Court. It goes all the way back to Chief Justice Marshall's opinion in Wiltberger and McBoyle by Justice Holmes in 1931. And it's all about fair notice. And no ordinary person would think that what the appellants did here was stealing. That's why the jury is asking for a way to acquit. This isn't stealing. And the fair notice problems in this particular case are particularly problematic because, remember, this fishing line has no markings on it. No person, the government's witness, the NOAA observer, Trevor Hope, testified on cross-examination. There is no way that anybody would know that this fishing line was allowed. Counsel argued to the jury that the theft wasn't willful? Yes, your honor, that was the basis. There was a willfulness? There was. That was all we had to work with. And the jury rejected it. The jury rejected that argument. Because this jury was strictly following the court's instructions, as we see from the notes it was sending back. It was literally parsing these instructions. And when you do that, you see that the willfulness instruction says you have to do something that the law forbids. What does the law forbid? As far as the jury knows, it forbids stealing. And what does it mean to steal? Any taking, like knowing intentionally taking somebody's property, even just any appreciable movement of that property that temporarily deprives someone of ownership, that is stealing. And that just does not cover what we ordinarily think of as stealing, as the facts of this case show. Mr. Adler, may I just ask you a question? I know it's not part of the appeal, but I'm just curious. What was the evidence presented as to the property having a greater value than $1,000? There was evidence on that, your honor. I believe that the fishing line and the hooks were about $1,300, and then they estimated the value of the sharks. And so there was restitution in this case of $3,300. And that's really how this case should have been resolved. We would be happy to pay the damages, move on with our lives, not to make this literally a federal case. This is a felony. It carries up to five years in federal prison. Our clients are upstanding citizens of the community. They are now convicted felons with all of the collateral consequences that attach from that. And so that's how this case really should have been handled. We just think this prosecution never should have been brought. We pay the money and we move on. That's really how this should have been resolved. Wasn't the bigger issue that Morissette was getting at the difference between civil and criminal violations? And what in these jury instructions made it clear that this was a criminal violation? Why couldn't these exact instructions constitute a civil violation instead? It may well constitute a civil violation, but I think you're right, Your Honor. I mean, the jury knew that this was a crime. They knew it was a criminal case. But the only mens rea on this that the jury was instructed on was intent to steal or purloin and the willfulness instruction. That's really all that they got. But again, it all came down to the meaning of the word steal. What does it mean for an intent to steal? And if you look at the instruction, it's just, well, you knew it belonged to someone and you took it, that's stealing. And while that may be stealing in many cases, the facts of this case show. I don't think that's stealing in any case, though. And that's the problem. I don't think that you need the conversion instruction to make it stealing. Stealing involves an evil heart, right? We've seen that in several cases. But I don't see anything in the instructions that go to that as opposed to if you take this thing that you know belongs to someone else for any reason, if you know that that's what you're doing, then you're guilty. And I just don't see how that gets in a criminal mens rea, regardless of what your intent to do with the property is afterwards. Well, we would, of course, agree with that. I think you're... The problem I have, though, is I don't think that that's the... I don't think that's the instruction that you sought or the objection that you raised. So that's where I'm facing a little bit of a disconnect. It seems that your focus was on defining steal. And at least for my part, I'm more concerned that the mens rea wasn't fully explained to the jury. How can we... If I have a concern about one and you raise the other, what do we do? We also asked for theory of defense instructions that sort of got at this in different ways. We asked for a defense instruction that said, look, if you're calling the cops on yourselves repeatedly, that means you don't have an intent to steal. We also gave a theory of defense that didn't use the word convert. It just said if you're not taking it for your own use or benefit, then that is not an intent to steal. And the Morrissette definition doesn't use the word conversion. It doesn't say convert. It says to keep, to keep wrongfully. So any of those... But couldn't you steal if you just... Let's say that these lines weren't generally illegal, but you're just a shark lover. And whenever you see one, you're not going to use it for yourself, certainly, because you love the sharks. But you just want to get rid of it and kind of take it away. I think that would still be stealing, right? I'm not sure about that, Your Honor. It might be something else. It might be criminal mischief. It might be destruction of government property. It sounds like eco-terrorism. If you know that the government line... If the line is this rare permit and you're destroying it, because you don't like the way the government is using it, that does feel wrong, right? But of course, that is not what we have here. This isn't government property. This is private property. Correct, Your Honor. But of course, Your Honor. But my point is they had no idea that this was a rarely permitted NOAA research line. If it was government property, then 641 would be applicable. They'd be charged with 641 and not 661, right? I'm not sure if 641 extends to the federal maritime jurisdiction, but you're right. This was private property. But the point is that they didn't know. This statute was applicable because of the maritime jurisdiction, because of the open waters that they were in. That's correct, Your Honor. So just to go back to Judge Grant, your point, I mean, I think we tried to get at this felonious taking, which is how it goes back to the common law on this. And that is what is going to separate a criminal arson offense from a civil tort. It's this felony. May I ask you a question? I'm sorry. The jury notes that you had about that the jurors wanted further guidance on the definition of mistake or bad purpose. And Judge Middlebrooks instructed them just to rely on the ordinary meaning of those words. So those words were not in any way, shape, or form further defined or clarified in the jury instructions. That's correct, Your Honor. That's correct. I mean, I think we could say the same thing about stealing. I mean, this is a common word. We know it when we see it. The jury knew that this wasn't stealing. They knew that. And they were searching for a way to reflect that understanding in their verdict. And there just wasn't anything in the instructions, despite our asking for that. I'd be arguing to reserve some time. Thank you, Mr. Adler. Mr. Colan for the government. Good morning. May it please the court. Jonathan Colan for the United States. And with me is Tom Watts Fitzgerald, who was the trial USA. The jurors found that it was stealing when they took fresh line from a marked buoy. And that was stealing. It was known property. It was not a mistake. Mr. Colan, the jurors found that they found the defendants guilty after an Allen charge, correct? And after several notes asking for further guidance from the district court. Yes, Your Honor. They were being diligent and asking for what these words meant. And the court further defined willfully to show with bad purpose. That's what the evidence that was presented in this case was that these individuals believed their intent was that they believed that this was an illegal fishing line. Correct. What you have, you have no other testimony. You have no other testimony. Do you have any other testimony that was what their intent was? We have testimony showing that their stated intent was false because they lied on several occasions. Do you do not have evidence from the individuals who were on the fishing trip, who were a tourist on the boat who testified and whose videos you used that they believed that that was an illegal fishing line? That's what they said. Our evidence disproved their words. What was the evidence that you had as the government? That they lied about several key points, Your Honor. Who? The defendants? Yes. Okay. Tell me what you found. They said to the family, merely from looking at the buoy on the water before they hauled up anything, this is illegal line. You couldn't know that from looking at a marked buoy. The line was so far down, you couldn't know that there were sharks there. You couldn't know that there was who was old or new or abandoned. Once they started pulling up, the evidence showed that the line was fresh, brand new lines with fresh bait. There was repeated testimony from- How would they not know that it was an illegal line? They had no evidence that it was illegal. All they know is that there was a marked buoy saying, someone has put this down with a marker saying it's ours. And they pull it up and they pull it up and there are these hooks and sharks. I mean, why? Of course, their understanding was that that was illegal. The evidence shows that those lines generally are illegal. Why would they have thought that this was any different? Respect for Your Honor, I don't believe that's what is the inference to know that there are sharks on the line. The evidence was that it's well known in the industry that there are permits to have legal shark fishing. Most of the sharks there are perfectly capable of legally being fished with the proper permits. And there's evidence also- Isn't there evidence, though, that they called Barry Portillo at the Fish and Wildlife Conservation Commission to find out whether or not this was all right? And he said, preserve everything, let me investigate. Because even he knew that there was no evidence at the moment that showed this was legal or illegal. They had no basis for knowing that it was illegal. So again, what is the intent? Because last time I checked, when I went to law school, and I went to my criminal law class, you had to have mens rea because you're not arguing this is a general intent crime or a strict liability crime. No, Your Honor. Right? So you have to have specific intent. You have to have mens rea. What is the mens rea that they had the intent to steal or purloin? To act with bad purpose without mistake. What was their bad purpose? To take the property of another, and not for any proper reason. They presented their innocent reasons. They presented their argument that this was trying to save sharks. And the Gristow case, what was applying Turley, this is an important distinction, Your Honor. They were relying on Morissette. But Turley is the case that defines stealing. Morissette was about conversion. The Gristow case in the Seventh Circuit affirmed instructions very similar to the ones in this applying Turley's definition of stealing in a case where someone took a gun off an officer who was just shooting at dogs. And their defense was, I'm doing it for innocent purpose to prevent them shooting dogs. They took the gun and threw it away. And they said, that's not stealing. And the Seventh Circuit, applying Turley in Gristow, affirmed instructions very similar to this one that showed taking something without mistake of a property of another was the proper mens rea. That's what's in this court's pattern instructions and other stealing statutes. And to go back to Judge Wilson's question about the distinction between 661 and 641, I think, really proves the point here. 641 has two paragraphs. 641's first paragraph is about wrongful acquisition. And I'm sorry to have to correct counsel here. It lists stealing, purloining, and converting as alternative means of wrongfully acquiring the property. 641's second paragraph, however, talks about retaining that property with the intent to convert to one's own use. The fact that 641 separates those in two separate paragraphs shows that 661 here, textually, does not require keeping to convert to one's own use because its provision mirrors the first paragraph of 641. But what bad purpose does it require? You've said it's not a strict liability crime. So what bad purpose does it require? If the jury had believed the evidence that they were acting to save sharks, that was presented. It was presented in testimony. It was presented in defense argument at closing. The jury heard that. But they asked specifically for further clarity on what constitutes bad purpose in quotations. And bad purpose is not defined at all in the jury instructions. So what exactly, then, is the definition of bad purpose? To do something that the law forbids is what it would explain. That's how it's defined regularly. That would be strict liability. To do something that the law prohibits with no mens rea. That's not a bad purpose. Well, I will also point out, as your honors have mentioned, that that's not what their argument was below. And so I don't think it establishes plain error here. But to go to the substance of the point, what they were arguing was mistake. That they were acting with noble purpose. That was fully presented. And the jury rejected their noble purpose argument. Well, mistake also was not defined. Because the jury also asked, is there any further guidance on the definition of, quote, mistake, end quote. I think that's something that's in general understanding, your honor. And it was very clear. Well, I don't know if it's understandable or not. Because it seems to me that what you're articulating and what Mr. Watts Fitzgerald charged these individuals with is a strict liability crime. I think, your honor, respectfully, that in the context of this case, it was very clear what they meant by mistake. What they meant by mistake was, we thought this was an illegal line, and we were saving sharks. If it was clear, and if that was consistent with the jury instructions, then why would the jury have needed to ask that? Because they were being diligent, your honor. They wanted to know what the words meant. They wanted to know how it applied here. And an interesting twist in this case, your honor, was that all parties, and the judge himself at first, had not put willful and knowing tied to the elements of the offense. When they first read the elements instructions, all sides had left out knowing and willful. The jury, in fact, pointed that out. And that was the jury being diligent and saying, wait a minute, when you defined knowing and willful, what did that apply to? And the judge then responded to that note by saying, by applying the knowing and willful instructions to the elements of the offense. So it's clear the jury was trying to find out what it is, how does their defense relate to this? What does it mean that they were acting with mistake? Because that was their defense, mistake. They heard it, and the jury rejected it. And so the judge could have, in response to the request by the jury, Judge Middlebrooks could have instructed the jury that you don't have to find that they intended to convert the property to their own use in order for them to have violated the statute. He could have done that, though, right? Correct. That would be a correct statement to the law. So the instruction they requested was incorrect. The jury was struggling, but he didn't do that. Well, I'm sorry. I don't recall if the jury had asked about converting to their own use. But if the judge had instructed them specifically the opposite of what they had requested, that would have been the correct statement of the law. So how was the jury confused then? The jury was confused because the judge had originally defined knowing, absence of mistake, and willful, to be acting with bad purpose, but hadn't actually included those words in the elements of the offense. So when the jury asked what do those words apply to, the judge corrected everyone's mistake and restated the elements, including the words knowing and willful. Okay. So my understanding is the reason why the judge did not give this instruction because the word conversion or convert is not in the statute that the government charged these defendants with. Is that your argument? Correct. As it is in 641 and the other statutes we have cited in our brief. Now, Morrissette kind of confused things, though, when the Supreme Court in Morrissette said probably every stealing is a conversion, but certainly not every knowing conversion is a stealing. That kind of confused things, didn't it? Yes. And remember, in Morrissette, the question for the court was what was the mens rea for conversion, whether it required knowing or not. So that wasn't what was before the court. And the fact that they said probably I think even shows it's not even just dicta. It's kind of musing. It's probably every stealing is conversion. But that wasn't the issue they were deciding. Your argument is that's just dicta. Yes. Whereas Turley specifically addressed what the word stealing means in federal statutes. And that definition of stealing in Turley fits perfectly with the court's instructions here. Well, so let me ask you this now, since is this the type of case, I mean, he makes the argument that the government shouldn't have charged them with this crime. Is this the type of case where the United States attorney should have exercised prosecutorial discretion not to bring a case like this if there was no intent for them really to convert the property to their own use? They were trying to do something good. Well, again, Your Honor, we don't believe they were trying to do something good. We think they act with bad purpose. What do you think they were trying to do? What's your theory of the case? To understand the context of this case, Your Honor, why it was something important enough to bring as a prosecution, we have to understand that commercial fishing and commercial diving in this case, in this circumstance, are functionally acting. Give that longer answer next if you want. But what I want to know is what you think their purpose, what the government thinks their true felonious purpose was. To entertain their guests and have more sharks available for their customers. The divers and fishermen are functionally competitors here. The fishermen are removing sharks from the waters. The divers make their livelihood by having sharks for their customers. That's a pretty big risk-reward, isn't it? I mean, it's only so often you're going to run into a potentially illegal shark line and you would put yourself at risk of a felony in order to have one family have a good day on the water. I can't explain why people commit felonies, Your Honor. But what I'm pointing out is that we don't believe they're good motive. These were competitors. Did they testify? I'm sorry? Did they testify at the trial? The defendants themselves? I don't believe they did. I don't recall, but I don't believe they did, Your Honor. And to the counsel's suggestion that this could be— that they had done the same thing in other excursions with other tourists? No, Your Honor. We didn't look at past acts. So it's not a modus operandi? It's not something that they do all the time on excursions? Past acts were not explored in this case, Your Honor. I can point out some additional evidence of where they lied. I wanted to ask another question, which is, this is a statute that also allows for justifying, correct? If they'd had a justification defense of necessity, they could have presented that. Just as a yes or no, Mr. Cohen? Yes. Yes, okay. As opposed to a criminal conviction? Yes, Your Honor. So what was the other evidence of felonious intent? Several things, Your Honor. They lied about saying, oh, it was a green boat. There was no evidence that there was another boat. The buoy that shows that this was marked line belonging to someone else disappeared between the time of when the tourists were taking pictures and when authorities showed up. The authorities would have known exactly what a marked buoy meant. That was testimony and evidence. But that buoy that showed that it was marked with the name of the people who had put it down, the boat of the company that had put it down, that buoy disappeared before authorities showed up. And the testimony was that would have shown to the authorities that there's someone else. Did you have any evidence that they're the ones who discarded the buoy? Or did they bring it onto the pier and they put it aside and the individual who's in charge of the pier is the one that got rid of it? It was not the pier, Your Honor. This disappeared before the pier. This was while they were on their own boat before they ever got to the pier. The authorities show up and the buoy is gone. How many times did they call law enforcement between when they found the fishing line and when they got to the pier? Several times, Your Honor, until what we believe is a false story. And that's obviously evidence of people who like to commit theft. They like to call law enforcement, correct? If you tell them a false story, it is, Your Honor, it is entirely consistent with committing a theft. And to counsel's point that this could have been resolved without criminal charges by some kind of civil fine or something. If someone steals a car on a military base, the proper response is that, well, pay restitution for that. That's a crime. This is not stealing a car on a military base. That is a silly example. There's no comparison. I'm sorry, Your Honor. Respectfully, I think when you steal someone else's property within a federal jurisdiction, that's a theft. When you steal with intent, with intent to steal, which you have not yet been able to convince me that that is what occurred here. Well, I'm sorry, Your Honor, but the jury was instructed what it meant to intend to steal. And that instruction was the same kind of one given in Gristow, which was affirmed by the Seventh Circuit applying Turley. And respectfully, Your Honor, I understand we seem to be disagreeing on this point, but the jury found that they did have the intent to steal. That they took property that cost thousands of dollars from the victims that sabotaged a government environmental research study. These were the fishermen's livelihood. They're paid for their sharks that they catch legally. These were not endangered sharks that they would catch and keep. The endangered sharks, the testimony showed, would have been released. The sharks that they would have kept, they would have been paid for. That's their livelihood. Did they keep the sharks that were on the line that they could sell? The defendants released sharks that the victims would have been paid for if they had, when this case, would have been paid for their catch. That's their livelihood. And plus, they lost thousands of dollars of their own specialized equipment that was clear to anyone who pulled it up that this was fresh line, fresh equipment, not abandoned, not old. Anyone, the testimony showed that when they pulled it up, anyone would have known that this was not abandoned line. And that they kept pulling. Can't illegal shark lines are just as illegal the first day that they're there as, you know, two years later, right? There were two defenses. They were saying both that it was illegal and that it was abandoned. The fact that it was fresh disproved that it was abandoned. The fact that there was a permit proved that it was legal and nothing that they saw would have told them the difference. But there wasn't any, there wasn't any evidence. There wasn't a flag or there wasn't anything that showed that this was, that it belonged to someone. There wasn't on, let's say where the buoy was, a flag or anything saying, you know, do not remove. I'm sorry, but the testimony show that the marking on the buoy is what shows that this belongs to someone. It was marked with the name of a boat. That's how you mark and indicate that. No, I understand that. But you could have an illegal person take a buoy and, and wrap something around a buoy that belongs to someone else. Correct? Yes. There's no, there's no evidence that, that an illegal fishing line couldn't be attached to a buoy that belongs to someone. Those are the two differences arguments that they're making. And I want to respond to each one because I think the difference between them is important. So I want to make sure it's clear. There's, did it belong to someone? And then was it illegal? So the marking on the buoy showed that it belonged to someone who wasn't abandoned. There was also testimony that said that there was nothing that requires you to put on the buoy or any marker showing that you have a license. What the evidence showed was they had no basis for knowing that it was illegal. In fact, there was evidence that they had every reason to know, as experienced people in the industry, that many of such lines are legal. So merely by looking, they had no way to know that it was illegal. They just said, oh, here's some marked buoy with lines belonging to someone else. Without even pulling it up, they told the family it was illegal, that they had no basis for knowing it was illegal. In fact, they had reason to know that it could have been perfectly legal. If you see a car on the side of the road, you have no basis for knowing if it's stolen property that you want to save and return to someone. You have no basis for knowing if it's illegal or legal. They had no basis for knowing that this fishing line was illegal. They just took it and discarded it because they're competitors in the industry. They had no basis for knowing that it was illegal. You did not present any evidence of this purpose, that it's, you know, that they had competition and that that was their intent. I mean, respectfully, Mr. Cohen, okay, I like you very much. You're a very good attorney. But respectfully, you have not presented any evidence of that. Your Honor, I think you are assuming the facts, the contrary facts. They had no basis for knowing it was illegal. We have shown that they lied on about several key points to the law enforcement agency. That shows what was in their- I understand that they themselves did not present any evidence. But they presented the evidence through the tourists who were on the boat. And you did not present any contrary evidence. I think, Your Honor, the fact that they lied shows what's in their heart. And the fact that they had no basis for telling the people that it was illegal. And the fact that as experienced fishermen, we had testimony that shows they were aware or should have been aware that a perfectly legal line like this exists. And they had no basis for thinking otherwise. The jury heard it and rejected their innocent explanation. Thank you, Mr. Adler. Mr. Cohen, you've reserved some time for rebuttal. I hope he has not, Your Honor. There's evidence in this record that your clients lied, right? No, Your Honor, that is not true. So let's start from the beginning. They take out the Kuehl family, a law enforcement family from Kansas City who is coming down here, like many families do, to enjoy this sort of life-changing experience in nature. They come across this line. No markings. Look at the buoy. There's pictures of it. This is a janky-looking buoy with faded letters. There is no way that anybody would think that this was allowed to be there. There are 20 sharks dying in distress on this line. There is no boat in sight. They're sitting there for six hours. And what do they do between about 2.26 p.m. and 6.30 p.m.? You're asking about the evidence that your clients lied. I'm not sure what they lied about, Your Honor. I'm looking for the lie here. They told the officers everything. They were in communication with them for four hours. When Officer Pardolo finally meets up with them at 4.35 after taking two hours to do who knows what, there's a pile of line on the boat. They're completely open and honest about this. Pardolo says, just hold on to this. Bring it back to the dock. That's what I wanted to ask. Law enforcement came onto their boat at some point. Correct. At 5.30 p.m., three hours after, he finally meets up with them as they're coming ashore. There's a boat. The boat is full of line. Pardolo says, just bring this back. Hang on to it. He goes back to the dock. He follows the officer's instructions. He's still there, by the way, at 8.30. He's not running away. The issue on appeal is whether or not the evidence was sufficient to convict them. Of course, Your Honor. The issue on appeal is whether or not the trial judge abused his discretion by failing to that they intended to keep the property for their own use. Your Honor, that's correct. I'm simply responding to the government's suggestion that there was any sort of felonious taking in this case, and that is one of the issues on appeal. Was the jury instructed that in order to find the defendants guilty, you have to find an intent to steal? They said intent to steal. Intent to steal. That's what the jury was instructed.  But we have to look at how the word steal was defined. And if we look at the jury notes, I think Judge Lagoa, you're right to look at these notes. This jury was more sophisticated than even the lawyers or the judge in this case. They found things that— So your argument is that steal means you have to convert it to your own use? Yes, or keep it or use it or benefit from it. You don't have any authority to support that position. Your Honor, we have four— This is an issue of first impression because there has never been a prosecution like this since the founding of this country. We have four points of authority that do support— Other theft statutes have the word convert to your own use, but this statute does not have the word convert to your own use. Your Honor, again, I think that supports us. This shows that our statute is narrower. The Supreme Court in Morrissette explained that it rejected the— Was that true, what I just asked you? This statute doesn't have conversion as an element of the statute? Correct. That is correct. But is it also true that other theft statutes do have the word— Yes, Your Honor, in— Like the statute in Morrissette? Yes, and in— Isn't that why this case is different than the others? No, because this statute, 661, has been on the books since 1790 in some form. No prosecution federally has ever existed like this. So you're telling me that Judge Middlebrooks abused his discretion by failing to give an instruction that the statute includes conversion when the statute does not use the word conversion like other theft statutes? Your Honor, in Morrissette, the Supreme Court, first of all, defined stealing as an intention to keep, right? I don't know how it can be an abusive— how our proposed definition can be legally incorrect if we are lifting it from the Supreme Court precedent and from Black's Law Dictionary, by the way. Our second point is that penal statutes have to be strictly construed. That, too, goes back— So your argument is every stealing means you intended to keep it to yourself? That is what the Supreme Court said in Morrissette. Probably every stealing is a conversion, but not every conversion is a stealing. So that explains the problem here with the government's argument. They're trying to make this surplusage argument, which is squarely foreclosed by Morrissette. And then our third point, we have the word purloin. No dispute that that requires a misappropriation for one's own purposes, one's own use. No dispute about that. No dispute that steal and purloin are synonymous. Right. And that requires—that's what the definition of purloin is under the common usage or under Black's Law Dictionary. I think we cited Webster's Dictionary for that, but there was no dispute about that. And so these words have to be read together, right? And again, it's a narrower statute. So you're telling us that we should write an opinion that says every stealing, every theft requires that there was an intent to keep the property to your own use? I think the court should write an opinion following the definition of the term steal in Morrissette, which is exclusive and plain as day and is exactly what we propose in footnote two of our proposed jury instructions. And the final point I'll say is that, you know, again, strictly construing penal statutes, definition of purloin, and then we have this felonious taking requirement as well. So if you don't like that particular definition here, the instructions as a whole— And this jury said, yes, there was an intent to steal. Again, Your Honor, under this overbroad definition of the term steal, which did not require a felonious taking, any appreciable change in the location, temporary deprivation of ownership, that's not felonious taking as the facts of this case illustrate. Gotcha. Thank you, Your Honor.  Thank you, Mr. Adler and Mr. Cullen.